BARRY J. PORTMAN
Federal Public Defender
GEOFFREY A. HANSEN
Chief Assistant Federal Public Defender
19th Floor Federal Building – Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant Bibbs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>MAURICE BIBBS,<br><br>    Defendant. | No. CR 07 - 336 WHA<br><br>**DEFENDANT BIBBS'S PRE-HEARING MEMORANDUM RE: DETENTION HEARING PROCEDURE** |

**Introduction**

This case involves an alleged carjacking in San Francisco in March 2007. Although the defendant Bibbs was originally charged in state court, the case has been moved to federal court where an indictment has been issued charging him with various federal offenses. Mr. Bibbs initially appeared on May 31, 2007, and Government asked for the defendant's detention. The matter was set for a hearing on June 7, 2007, before Magistrate Judge Zimmerman. At the initial appearance, counsel for Mr. Bibbs lodged an objection to the Government proceeding by way of proffer at the detention hearing scheduled before Judge Zimmerman. This motion further sets forth the legal grounds for that objection. In essence, the defendant contends that the use of

proffers violates both the Sixth Amendment and the Due Process Clause.

**A. Hearing Procedures Under the Bail Reform Act of 1984**

The Bail Reform Act of 1984, codified in 18 U.S.C. § 3142, greatly expanded the power of the Government to hold defendants in pretrial detention. Prior to the passage of the Act, bail served the sole purpose of preventing flight. *See* Joseph L. Lester, Presumed Innocent, Feared Dangerous: the Eighth Amendment's Right to Bail, 32 N. Ky. L. Rev. 1, 38 (2005). In passing the Bail Reform Act, Congress intended to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released." *United States v. Salerno*, 481 U.S. 739, 742 (1987) (quoting S. Rep. No. 98-225, at 3 (1983), reprinted in 1984 U.S.S.C.A.N. 3182, 3189). Thus, a court determining whether to release a defendant on bail must now consider not only whether release conditions will "reasonably assure the appearance of the person," but also whether pretrial release will "endanger the safety of any other person or the community." 18 U.S.C. § 3142(b).

In order to detain a defendant before trial, a court "shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). The detention hearing procedure places the burden of proof on the prosecution and affords the defendant certain basic rights, but it does not provide the entire array of procedural safeguards available at trial:

> At the hearing, such person has the right to be represented by counsel, and, if financially unable to obtain adequate representation, to have counsel appointed. The person shall be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing. The facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence.

*Id.* Thus, while the defendant has the right to cross examine adverse witnesses who appear at the

DETENTION MEMORANDUM                    2

hearing, the language of the Act does not address the question of whether the defendant has the right to confront those witnesses the government does not call upon to testify. *See id.* In addition, while it specifically allows a *defendant* to present evidence by way of proffer, the Act is "silent upon the question whether the *Government* may do so." *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (emphasis added).

Nevertheless, courts which were called upon early in the Act's history to interpret whether the Government could proceed by way of proffer held that the Government could do so. *See id. See also United States v. Gaviria*, 838 F.2d 667 (11th Cir. 1987); *United States v. Martir*, 782 F.2d 1141 (2d Cir. 1986); *United States v. Winsor*, 785 F.2d 755 (9th Cir. 1986); *United States v. Acevedo-Ramos*, 755 F.2d 203 (1st Cir. 1985). In reaching this conclusion, the courts did not look to the plain text of the Bail Reform Act, but relied on the Act's history, noting that "the Government regularly proceeded by way of proffer under the District of Columbia bail statute that served as the model for the Act. That it could continue to do so under the nationwide Act literally goes without saying." *Smith*, 79 F.3d at 1210 (internal citations omitted).

In addition, several courts, including the Ninth Circuit, interpreted the Bail Reform Act so as to deny a defendant an absolute right, at least under the Due Process Clause, to confront and cross-examine witnesses whom the government has not called to testify. *See Winsor*, 785 F.2d at 756; *United States v. Delker*, 757 F.2d 1390 (3d Cir. 1985); *Smith*, 79 F.3d at 1210. The defendants in these cases argued that due process mandates a right to confront adverse witnesses in detention hearings. *Winsor*, 785 F.2d at 756; *Smith*, 79 F.3d at 1210. The courts rejected these due process challenges by pointing to the limited purpose of detention hearings:

> A pretrial detention hearing, however, is neither a discovery device for the defense nor a trial on the merits. The process that is due is only that which is required by and proportionate to the purpose of the proceeding. That purpose includes neither a reprise of all the evidence presented before the grand jury, nor the right to confront non-testifying government witnesses.

*Smith*, 79 F.3d at 1210 (internal citations omitted). Similarly, the Court in *Winsor* rejected an argument that "due process requires that a defendant in a pretrial detention hearing be afforded

1  rights of confrontation and cross-examination." 785 F.2d at 756.

2  Although decisions such as *Smith* and *Winsor* appear to limit procedural safeguards under the Bail Reform Act, they do not bar the application of the Sixth Amendment's Confrontation Clause to detention hearings. First, these decisions came in response to due process challenges and did not address the issue of whether the Sixth Amendment applies in detention hearings.[1] Courts have recognized the distinction between a right to confrontation that emanates from the Due Process Clauses of the Fifth and Fourteenth Amendments and the Sixth Amendment's Confrontation Clause. *See United States v. Barraza,* 318 F. Supp.2d 1031, 1033 (S.D. Cal. 2004) ("[T]he right to confrontation in a supervised release revocation hearing is a due process, not a Sixth Amendment, right."). Thus, decisions that limit the *due process* right to confrontation in pre-trial detention hearings have little bearing on the question of whether the *Sixth Amendment* right to confrontation applies.

In addition, the *Smith* and *Winsor* line of cases preceded the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004) – a case which announced a "watershed rule" that revolutionized Confrontation Clause jurisprudence. *See Bockting v. Bayer*, 399 F.3d 1010, 1019 (9th Cir. 2005) ("The difference between pre- and post-*Crawford* Confrontation Clause jurisprudence is not the sort of change that can be dismissed as merely incremental. Instead, it is an absolute pre-requisite to fundamental fairness."). Because *Crawford* fundamentally changed the role of the Confrontation Clause in criminal prosecutions, the application of the right to confrontation in detention hearings must be re-examined in light of this decision.

**B. The Supreme Court's Decision in *Crawford v. Washington***

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

---

[1] Although the defendant in *Smith* cited the Confrontation Clause as well as the Due Process Clause in making his claim, the Court's opinion never addressed his Sixth Amendment argument, focusing instead on the due process challenge. *See* 79 F.3d at 1210.

DETENTION MEMORANDUM                             4

him." U.S. Const. amend. VI. Until recently, Confrontation Clause jurisprudence was governed by *Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980), which admitted hearsay statements where the declarants were unavailable and the statements bore adequate "indicia of reliability." Such reliability was inferred where the evidence fell within a "firmly rooted hearsay exception." *Id.*

In *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004), however, the Supreme Court abandoned the *Roberts* reliability test insofar as it applied to testimonial evidence. Following a thorough historical analysis of the right to confront adverse witnesses, the *Crawford* Court found that the "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Id.* at 50. The *Roberts* test failed to accomplish the purposes of the Confrontation Clause because it of its unpredictability and its "demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude," such as "accomplice confessions." *Id.* at 63-64. Instead of focusing on reliability and "firmly rooted hearsay exceptions," the Court in *Crawford* held that "the Framers would not have allowed admission of *testimonial* statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53-54 (emphasis added). Although the Court did not "spell out a comprehensive definition of 'testimonial,'" the term applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68.

In this district, the Government almost exclusively proceeds at a detention hearing by way of proffer, which is simply another way of saying that it introduces rank hearsay without any attempt to show that the hearsay satisfies a hearsay exception. Even under the old *Roberts* test, this use of hearsay arguably would be inappropriate – but certainly under *Crawford* the introduction of this hearsay is improper if in fact the Sixth Amendment right to confrontation applies at a detention hearing.

The Supreme Court in *Crawford* did not address the question of whether the Sixth

1  Amendment right to confront adverse witnesses applies outside of the trial setting. The language
2  of the Sixth Amendment itself, however, states that the right exists in all "criminal prosecutions,"
3  a phrase which encompasses more than the trial itself. *See* U.S. Const. amend. VI.*; Cf. United*
4  *States v. Abuhamra,* 389 F.3d 309, 323 (2d Cir. 2004) (Sixth Amendment right to public trial
5  applies to bail hearings). In addition, several passages of the Constitution refer to "trials" as
6  distinct from "criminal prosecutions." *See*, *e.g.* U.S. Const. art. III, § 2, cl. 3 ("The *trial* of all
7  Crimes, except in Cases of Impeachment, shall be by jury."); U.S. Const. amend. VI ("In all
8  criminal *prosecutions*, the accused shall enjoy the right to a speedy and public *trial*."); U.S.
9  Const. amend VII ("[T]he right to *trial* by jury shall be preserved.") (emphasis added). This
10 shows that the Framers did not intend to use the terms "trial" and "criminal prosecution"
11 interchangeably. "Indeed, the Sixth Amendment's opening phrase, 'in all criminal prosecutions,'
12 seems calculated to reach conduct before and beyond the time and place of a criminal trial."
13 John C. Douglass, Admissibility as Cause and Effect: Considering Affirmative Rights Under the
14 Confrontation Clause, 21 QLR 1047, 1065-66 (2003). Thus, the Sixth Amendment's
15 Confrontation Clause protects the rights of defendants not only at the trial, but also at all other
16 stages of the "criminal prosecution," including pretrial detention hearings under the Bail Reform
17 Act.[2] Accordingly, the rules set forth in *Crawford* should apply in detention hearings.
18     The Second Circuit's decision in *United States v. Abuhamra*, 389 F.3d 309 (2d Cir.
19 2004), is instructive in that regard. There, the court was confronted with the issue whether the
20 Government could proceed in a detention hearing by way of *ex parte* submissions. When

---

[2] In *Pennsylvania v. Ritchie,* the Supreme Court stated that "the right to confrontation is a *trial* right, designed to prevent improper restriction son the types of questions that defense counsel may ask during cross-examination." 480 U.S. 39, 52 (1987) (emphasis in original). This statement does not suggest, however, that the Confrontation Clause has no applicability in pretrial proceedings. Rather, the Court in *Ritchie* was merely pointing out that the Confrontation Clause is not a "constitutionally compelled rule of pretrial discovery," and that it did not entitle a defendant to examine a Children and Youth Services file in order to obtain information that would make cross-examination more effective. *Id*. *Ritchie* did not address the question of whether the defendant has a right to cross-examine adverse witnesses in pretrial hearings.

DETENTION MEMORANDUM                 6

examining the propriety of such submissions, the court discussed both the applicability of the Due Process Clause and the Sixth Amendment to detention hearings – and found that both applied equally to bail hearings. With regard to the latter amendment, the court recognized that the Sixth Amendment's guarantee of a public trial on its face only applied to *trials,* but noted that the Supreme Court had nonetheless construed this right expansively to include jury selection, *see Press-Enterprise Co. v. Superior Court of California,* 464 U.S. 501 (1984); suppression hearings, *see Waller v. Georgia,* 467 U.S. 39 (1984); and pre-indictment probable cause hearings, *Press Enterprise Co. v. Superior Court,* 478 U.S. 1 (1986). In light of this authority, the Second Circuit had no problem extending the right to a public trial guaranteed by the Sixth Amendment to bail hearings. *Abuhamra,* 389 F.3d at 323 ("Bail hearings fit comfortably within the sphere of adversarial proceedings closely related to trial"). If the right to a public trial contained in the Sixth Amendment is applicable to a detention hearing, there is no reason to conclude that any of the other rights contained in the Sixth Amendment, such as the right to confront adverse witnesses, does not extend to bail hearings as well.

   In fact, the argument in favor of extending the Sixth Amendment's right to confront adverse witnesses to bail hearings is even stronger than are the arguments in favor of extending the right to a public trial to such hearings. While the Sixth Amendment refers to the right to public *trials*, the right to confront adverse witnesses applies to criminal *prosecutions.* If the former right extends to bail hearings, then certainly the latter right does as well. In addition, the entire thrust of the *Crawford* case related to the dangers of having hearsay, and even hearsay which would otherwise come in under a well-established hearsay exception, from being introduced against a defendant at trial. At a detention hearing, a defendant usually has not been indicted and has fewer of the procedural rights available then does a defendant whose case has proceeded through the system all the way to trial. Yet the detention hearing can result in exactly the same harm so strenuously condemned by the *Crawford* court – the danger of having a defendant's liberty taken from him or her on the basis of unreliable and untested evidence.

DETENTION MEMORANDUM       7

Clearly, the right to confront witnesses should be extended to bail hearings.

The Government has argued in other cases that the right to confront adverse witnesses under the Sixth Amendment does not apply to detention hearings because detention hearings are "regulatory" in nature, and are not "penal" proceedings. This claim is misplaced.

The Sixth Amendment makes no distinction between "regulatory" or "penal" proceedings; it refers to criminal prosecutions. It is certainly true that in response to claims that the Bail Reform Act violated the Eight Amendment's prohibition against cruel and unusual punishment, courts have held that the pretrial detention is not punishment; it does not follow, and certainly no court has held, that a bail hearing is not part of the criminal prosecution. Indeed, to the extent that the Government has argued that a bail hearing is some form of ancillary civil proceeding not directly involved in the criminal prosecution, that suggestion is belied by the fact that all of the rules and statutes governing detention hearings are contained in the criminal rules and codes. Thus, there is no civil rule or statute which allows for the detention of a defendant. If the Government is legally able to obtain the detention of the defendant under some authority contained in the rules regarding civil matters, it should identify those rules to this Court. There are no such rules, and it is frivolous to assert that a bail hearing is in fact a civil matter separate from the criminal prosecution itself.

But if the Government is correct in this claim, the defendant would be happy to have the Court construe detention hearings as civil matters. As such, the defendant would then be free to depose any potential witnesses prior to the detention hearing and to seek other discovery allowed for under the civil rules of procedure. *See* Fed. R. Civ. P 26.

There is no real issue that detention hearings are part of the criminal proceedings brought against a defendant where the Sixth Amendment should apply.

C. *Crawford* As Applied To Parole Revocation Proceedings

As is discussed above, the federal courts have not directly addressed the question whether the *Crawford* decision applies to pretrial detention hearings. Nevertheless, lower court decisions

in the somewhat related area of parole and probation revocation hearings show that the question about whether *Crawford* extends to these forms of hearings is unsettled. *Compare United States v. Hall*, 419 F.3d 980 (9th Cir. 2005) (holding that *Crawford* does not apply to the admission of hearsay evidence during revocation of supervised release proceedings) *with Ash v. Reilly*, 354 F. Supp. 2d 1 (D.D.C. 2004) (holding that *Crawford* is binding precedent for parole revocation hearings). These cases are worthy of analysis.

Parole revocation proceedings are similar to detention hearings in that neither are part of the trial itself. Unlike detention hearings, however, "the revocation of parole is *not part of the criminal prosecution*," and thus the full panoply of rights due a defendant in such proceeding does not apply to parole revocations. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (emphasis added). On the other hand, the defendant in a detention hearing, who has not yet been convicted and is *presumed innocent*, obviously enjoys a stronger right to confront adverse witnesses than the a parolee who has already suffered a conviction. *See Herrera v. Collins*, 506 U.S. 390, 398 (1993) ("A person when first charged with a crime is entitled to a presumption of innocence . . . . Other constitutional provisions also have the effect of ensuring against the risk of convicting an innocent person.").

In *Ash v. Reilly*, the court held that a defendant in a parole revocation hearing has a Sixth Amendment right to confront adverse witnesses. 453 F. Supp. 2d 1, 7 (D.D.C. 2004). The defendant recognizes that several federal courts, including the Ninth Circuit, have disagreed with *Ash*. *See, e.g. United States v. Hall*, 419 F.3d 980 (9th Cir. 2005); *United States v. Kirby*, 418 F.3d 621 (6th Cir. 2005); *United States v. Martin*, 382 F.3d 840 (8th Cir. 2004); *United States v. Aspinall*, 389 F.3d 332 (2d Cir. 2004), *abrogation on other grounds recognized by United States v. Fleming*, 397 F.3d 95 (2d Cir. 2005). However, what is crucial for purposes of this memorandum is the fact that the Ninth Circuit in *Hall* recognized that the Sixth Amendment applies in "criminal prosecutions," and denied Hall's request that he be allowed to confront adverse witnesses as a matter of right *only* because supervised release revocation hearings, like

DETENTION MEMORANDUM                9

parole and probation revocation hearings, are not part of the "criminal prosecution:"

> Because "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions" the full protection provided to criminal defendants, including the Sixth Amendment right to confrontation, does not apply to them. Rather, a due process standard is used to determine whether hearsay evidence admitted during revocation proceedings violates a defendant's rights.

419 F.3d at 985 (internal citations omitted).

Therefore, under *Hall*, defendants in detention hearings have a claim of entitlement to the Sixth Amendment confrontation right because detention hearings *are* part of the criminal prosecution. *See* discussion *supra*. *See also, e.g., In re Washington Post Co.*, 807 F.2d 383, 389 (4th Cir. 1986) ("Moreover, even if plea hearings and sentencing hearings are not considered a part of the trial itself, they are surely as much *an integral part of a criminal prosecution* as are . . . *bail hearings*.") (emphasis added). *See also United States v. Baucum*, 2001 WL 1448604 at 2 (D. Ariz. 2001) ("No one can seriously contend that a detention hearing is not a critical stage of a prosecution where the liberty of a defendant hangs in the balance."). Thus, detention hearings fall within the ambit of the Sixth Amendment's Confrontation Clause, even if proceedings to revoke parole, probation or supervised release do not.

**D.    The Sixth Amendment Right to Confrontation, as Interpreted in *Crawford v. Washington*, Must Apply in Detention Hearings Under the Bail Reform Act.**

As discussed above, pretrial detention hearings under the Bail Reform Act are part of the "criminal prosecution," and defendants in such hearings, therefore, enjoy the protection of the Sixth Amendment. Moreover, the significant liberty interests at stake in detention hearings, as well as the time-honored presumption of innocence, require that defendants in detention hearings be given the right to cross-examine all adverse witnesses as a matter of policy.

The Supreme Court has stated that "[a] person when first charged with a crime is entitled to the presumption of innocence." *Herrera v. Collins*, 506 U.S. 390, 398 (1993). The presumption of innocence plays a particularly important role during pretrial detention hearings because of their potential to influence the outcome of a trial:

> Jurors may speculate that the accused's pretrial incarceration, although often the result of his inability to raise bail, is explained by the fact that he poses a danger to the community or has a prior criminal record; a significant danger is thus created of corruption of the fact finding process through mere suspicion.

*Estelle v. Williams*, 425 U.S. 501, 518 (1975). In addition, pretrial detention imposes immense burdens on presumptively innocent defendants – burdens that the courts do not impose lightly:

> The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent.

*Barker v. Wingo*, 407 U.S. 514, 532-33 (1972). Indeed, the gravity of pretrial detention has led some commentators to argue that "[t]he defendant's liberty is at stake at a bail hearing much as it is at trial." Joseph L. Lester, Presumed Innocent, Feared Dangerous: the Eighth Amendment's Right to Bail, 32 N. Ky. L. Rev. 1, 45 (2005).

Consequences of such magnitude necessitate strong procedural safeguards in pretrial detention hearings, and the right to cross-examine adverse witnesses is essential to procedural fairness. The Supreme Court has stated that "[t]he Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to cross examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) (citing *Delaware v. Fensterer*, 474 U.S. 15, 18-19 (1985)). Cross-examination has been described as "the greatest legal engine ever invented for the discovery of truth." *California v. Green*, 399 U.S. 149, 158 (1970). It offers a defendant the "the opportunity to show that a witness is biased, or the testimony is exaggerated or unbelievable." *Ritchie*, 480 U.S. at 51-52. As the Supreme Court put it, "this type of evidence can make the difference between conviction and acquittal." *Id.* at 52. Without the right to confront adverse witnesses, the detention hearing process allows the incarceration of presumptively innocent defendants based on evidence whose veracity and reliability have not been tested "in the crucible of cross-examination." *Crawford*, 541 U.S. at 62.

DETENTION MEMORANDUM                  11

1  Thus, defendants facing pretrial detention under the Bail Reform Acts must have the right to
2  confront and cross-examine all adverse witnesses, regardless of whether the government intends
3  to call them to the stand.

4  **III.    At The Least, Mr. Bibbs Has The Right To Confront Adverse Witnesses in Detention Hearings Under The Due Process Clause**

5  Even if this Court were to conclude that a bail hearing is not part of a criminal
6  prosecution where the Sixth Amendment right of confrontation applies, Mr. Bibbs would
7  nonetheless be entitled to confront adverse witnesses under the Due Process Clause.

8  Mr. Bibbs recognizes that the Ninth Circuit, soon after the Bail Reform Act was passed,
9  held that the defendant had no absolute due process right to confront adverse witnesses at a
10  detention hearing.  *United States v. Winsor*, 785 F2d 755 (9th Cir. 1986).  However, if *Winsor* is
11  read to prohibit a defendant from ever having the right to challenge a Government proffer by
12  insisting that the witness be ordered to appear for cross-examination, the right to cross-examine
13  witnesses contained in the Bail Reform Act would be meaningless because the Government
14  could proceed in all cases by way of proffer only.  It can be argued, then, that Congress's
15  codification of the right of cross-examination reflects its recognition that there will be times that
16  in order to assure the integrity (and thus the constitutionality) of a bail hearing, due process
17  concerns require the production of certain witnesses.  Indeed, some courts have held that when
18  fundamental fairness so requires, a court may order the Government to call witnesses for cross-
19  examination at a detention hearing.  *See, e.g. United States v. Hammond,* 44 F. Supp. 2d 743 (D.
20  Md. 1999).

21  In *Hammond*, the Government proffered a police report, rather than calling the officers
22  themselves, to support an allegation that the defendant had violated 18 U.S.C. § 922(g)(1).
23  *Hammond*, 44 F.Supp.2d at 744-45.  The police report alleged that the officers had been
24  attempting to arrest the defendant when he ran from them, removed a gun from his waistband,
25  and dropped it.  *Id.*  The court held that:

> [W]hen the evidence proffered is the uncorroborated statement(s) of one or two police officers who allegedly observed a single act committed by the defendant, and where there is no other evidence offered in support of the eyewitness testimony, the Court should consider the proffer with great care and accord it limited weight . . . . [T]he judicial officer should require the government to present live testimony able to withstand confrontation, long- and well-recognized as the "greatest legal engine ever invented for the discovery of truth."

*Id.* at 746 (citing *California v. Green*, 399 U.S. 149, 158 (1970)).

The Supreme Court, when called upon to determine the validity of the Bail Reform Act, noted that the Act did not violate a defendant's due process rights *only* because of the procedural safeguards which assured that the detention decision was accurate. *See Salerno*, 481 U.S. at 751. The Court in *Salerno* reiterated that the Bail Reform Act conformed with the requirements of due process only because, "[i]n a *full-blown adversary hearing*, the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." *Salerno*, 481 U.S. at 750 (emphasis added).

The Supreme Court has never passed upon the issue whether a bare proffer of a witness statement at a detention hearing would satisfy the Due Process Clause. However, various courts, including the Ninth Circuit, have held in analogous situations that such a proffer would not satisfy the due process. *See, e.g., Barnes v. Johnson*, 184 F.3d 451 (5th Cir. 1999) (Due Process Clause requires certain minimal safeguards to protect the limited liberty interest at stake in a parole revocation hearing, including "the right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation"); *United States v. Simmons*, 812 F.2d 561 (9th Cir. 1987) (probationers and parolees have a right to confront and cross-examine adverse witnesses unless a judge finds good cause not to allow confrontation); *United States v. Martin*, 984 F.2d 308 (9th Cir. 1993) (the Due Process Clause requires a balancing test for parole and probation revocation hearings); *United States v. Kindred*, 918 F.2d 485 (5th Cir. 1990) (same); *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986) (same);

1  *United States v. Penn*, 721 F.2d 762 (11th Cir. 1983) (same); *United States v. Myers*, 896 F.
2  Supp. 1029 (D. Or. 1995) (police reports insufficient; defendant's interest in cross-examination
3  outweighed the Government's interest in not producing a witness under the balancing test
4  required by the Due Process Clause); *Downie v. Klincar*, 759 F. Supp. 425 (N.D. Ill. 1991) (the
5  Due Process Clause requires some right to confrontation in parole revocation hearings).

6        The Ninth Circuit's decision in *United States v. Hall,* 419 F.3d 980 (9th Cir. 2005), and
7  the decision it rested upon, *United States v. Comito*, 177 F.3d 1166 (9th Cir. 1999), are highly
8  relevant. As noted above, the issue in *Hall* was whether the defendant in a supervised release
9  violation hearing had the right under the Sixth Amendment to confront adverse witnesses.
10 Although the court noted that he did not have such a right because the supervised release hearing
11 was not part of the criminal prosecution, the court nonetheless held that the defendant had a due
12 process right to confront some witnesses. *Id.* at 986. This ruling was based on the Ninth
13 Circuit's earlier decision in *Comito*.

14       The issue before the court in *Comito* was whether the introduction of hearsay evidence in
15 a supervised release violation hearing satisfied the defendant's due process right to confront
16 adverse witnesses. The facts of the case revealed that the defendant had been charged with
17 various supervised release violations, one of which was based upon statements allegedly made by
18 the defendant's ex-girlfriend to a probation officer that the defendant had engaged in fraudulent
19 behavior. *Id.* at 1168. At the district court's revocation hearing, the court allowed the
20 Government to introduce the fraud allegations through the testimony of the probation officer,
21 rather than the girlfriend herself. *Id.* The defendant objected, claiming that his right to confront
22 adverse witnesses was violated by the allowance of this hearsay testimony. *Id.*

23       The court agreed with the defendant and reversed the revocation order. The court first
24 concluded that a defendant had a limited due process right to confront adverse witnesses at a
25 supervised release revocation proceeding, just as a defendant had such a right in a probation and
26 parole revocation hearing. *Id.* at 1170. While the court acknowledged that the right to confront

DETENTION MEMORANDUM            14

adverse witnesses was not absolute, and could be circumvented by a showing by the Government that there was good cause not to call a given witness, the question whether the Government satisfied the good cause test in turn depended upon a balancing test. *Id*. at 1171-72. This balancing test required the court to weigh the significance of the defendant's right to confrontation against the Government's explanation as to why the witness could not, or was not, called at the hearing. *Id.*

Applying that test to the facts before it, the court in *Comito* determined that the statements of the defendant's girlfriend that the defendant had engaged in criminal activity were crucial to the revocation determination. *Id*. at 1171. Moreover, because the statements by the girlfriend to the probation officer were unsworn hearsay statements, they were, as the court put it, "the least reliable type of hearsay." *Id.* Thus, the defendant's "interest in asserting his right to confrontation [was] at its apogee." *Id.* Further, the court concluded that the Government had not shown good cause for its failure to produce the ex-girlfriend at the hearing. Therefore, the court determined that the defendant's constitutional rights had been violated. *Id.* at 1172.

The importance of *Comito* to the issue of what procedural rights a defendant possesses at a bail hearing cannot be over-emphasized. *Comito* involved a supervised release violation proceeding, where a defendant has already been convicted of a crime and thus had a limited liberty interest. In contrast, bail hearings involve the freedom of presumptively innocent individuals. Not only is a defendant's liberty interest stronger in bail proceedings, but the standard of proof is higher; unlike a revocation proceeding, where the standard of proof is a preponderance of evidence, the standard of proof at a detention hearing is clear and convincing evidence, at least with respect to the dangerousness prong of the detention statute. Thus, it is clear under the reasoning of *Comito* that a mere proffer about a given witness's testimony at a detention hearing violates the Due Process Clause.

Mr. Bibbs again recognizes that there is a tension between *Winsor* and the *Comito* line of cases with respect to the due process rights of individuals at detention hearings. He submits,

DETENTION MEMORANDUM                15

however, that the two cases can be easily reconciled through a ruling that although the due process right to confront adverse witnesses is not absolute, that right may only be denied in situations where the Government satisfies the balancing test set forth in *Comito*.

### IV. Even If The Production Of An Adverse Witness Is Discretionary, That Discretion Should Be Exercised In Favor Of Ordering The Adverse Witnesses To Appear

There are certainly cases which were decided before *Crawford, Hall* and *Comito* which hold that the decision whether to require the production of witnesses by the Government at a detention hearing is an issue to be left to the sound discretion of the Court. *See, e.g., United States v. Gaviria,* 828 F.2d 667, 670 (11th Cir. 1987). As noted above, however, *Crawford* changed the landscape with respect to confrontation rights and held that the right to confrontation, at least with regard to witnesses who provide testimonial evidence, is absolute. *Hall*, in turn, suggests that if the court has discretion whether to require the production of witnesses, that discretion cannot and should not be exercised without a careful balancing of the factors set forth in *Comito*. But assuming those cases do not create the rights that Mr. Bibbs claims he has with respect to detention hearings, there is absolutely no issue but that this Court could order the Government to produce witnesses in the exercise of its discretion. Mr. Bibbs suggests that this Court should do so for a number of reasons.

Outside of the fact that this Court would not be forced to decide the constitutional issues raised above if it decided to order the Government to produce any witness it plans to rely upon to secure the defendant's detention, it needs little emphasis that this is a serious case, and any doubts about what process the defendant should be due must be resolved in favor of Mr. Bibbs. The Government bears the burden of proving that the defendant is a flight risk by a preponderance of evidence and danger by clear and convincing evidence. Thus, the Government must carry its burden through the use of witnesses and exhibits, and the defendant must be afforded the right to challenge that evidence.

For all of these reasons, the Court must order the Government to produce witnesses

subject to cross examination at the detention hearing. This request is particularly directed at any police witnesses and victims whose claims about the defendant will be referenced at the hearing.

Dated: May 31, 2007

                                        Respectfully submitted,

                                        BARRY J. PORTMAN  
                                        Federal Public Defender

                                               /s/

                                        GEOFFREY A. HANSEN  
                                        Chief Assistant Federal Public Defender