United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MAURICE BIBBS, and DEANDRE WATSON,<br><br>Defendants.<br>_____/ | No. CR 07-00336 WHA<br><br>**ORDER DENYING MOTIONS TO REVOKE MAGISTRATE JUDGE'S DETENTION ORDERS** |

## INTRODUCTION

In this criminal prosecution, co-defendants Maurice Bibbs and Deandre Watson each move to revoke detention orders issued by Magistrate Judge Bernard Zimmerman. This order finds that as to both defendants, the government has established by clear and convincing evidence that no release condition would reasonably assure the safety of the community. Accordingly, the motions to revoke the magistrate judge's detention orders are **DENIED**.

## STATEMENT

The affidavit and complaint filed by Federal Bureau of Investigation Special Agent Steven Robinson states the following set of facts. On March 14, 2007, at approximately 11:15 p.m., the San Francisco Police Department received a 911 emergency call regarding the armed theft of a vehicle in the Potrero Hill section of San Francisco. SFPD officers responded to the call and located the victim, who is referred to as A.W. (Robinson Decl. ¶¶ 1, 4–5).

During the interview, A.W. stated that she had pulled her vehicle, a rented Chrysler Sebring, to the area of 11 Dakota Street. She was in the area to visit a friend. A.W. exited the vehicle but left the engine running, stereo playing, and keys in the ignition. She was seven months pregnant at the time (Robinson Decl. ¶¶ 5, 8).

As she was walking away from the vehicle, she saw two unknown black men, wearing dark sweatshirts and dark jeans, walk across the street toward her. She later identified these individuals as defendants Bibbs and Watson. After defendants passed her, she turned her head and saw them getting into her rental car. Bibbs then allegedly pulled a handgun from the pocket of his sweatshirt and pointed it at A.W. She turned to run away and, as she turned, heard a clicking sound she believed was the gun misfiring (Robinson Decl. ¶¶ 6–7).

SFPD officers contacted Dollar Rent-A-Car and determined the license plate number of the vehicle. At approximately 12:09 a.m. on March 15, 2007, about an hour after the vehicle was reported stolen, SFPD officers saw the car traveling on Golden Gate Avenue (Robinson Decl. ¶ 9).

When the vehicle was stopped, it had four occupants. Defendant Bibbs was driving and defendant Watson was in the passenger seat. Two other individuals were in the back seat. SFPD officers brought A.W. to the scene of the vehicle stop and conducted a cold show. A.W. positively identified Bibbs as the man who pulled the gun on her and Watson as the man who drove the vehicle from the scene of the carjacking. Both were wearing dark sweatshirts and jeans. A.W. stated that the other two individuals were not involved in the carjacking (Robinson Decl. ¶¶ 10–11).

A search of the vehicle uncovered a Cobra .380 caliber pistol under the front passenger seat. Crime scene investigators found that the pistol had one live round lodged in its firing chamber that needed to be extracted with a tool. This was consistent with a handgun that had misfired and jammed (Robinson Decl. ¶ 13).

On March 19, 2007, during a recorded phone call from San Francisco County Jail, an inmate identifying himself as "Mo" called "Tasha." Agent Robinson believed Mo to be defendant Bibbs, and Tasha to be Natasha Crosley, known to Agent Robinson from previous,

2

unrelated contacts. During the call, Bibbs asked Crosley to make a three-way telephone call with "Fonya," believed to be Safonya Crawford, a friend of Bibbs. Crawford provided Bibbs with the telephone number of the victim, A.W. Bibbs then asked Crosley to make a three-way telephone call to A.W. During the conversation with A.W., Bibbs identified himself as the person in jail for stealing her car. Bibbs told A.W. that he "needed her not to show up for court." A.W. stated that she did not care that Bibbs and Watson took the rental car from her. She was, however, upset that they pulled a gun on her with her being pregnant. Bibbs admitted that he had taken the car and did not deny pulling a gun on A.W. He told her that he understood that she would be upset over the gun. Agent Robinson believed that Bibbs and A.W. know individuals in common and were told of each others' identities soon after the carjacking (Robinson Decl. ¶¶ 18–19).

*       *       *

The indictment charges both defendants with carjacking in violation of 18 U.S.C. 2119, and use of a firearm in connection with a crime of violence in violation of 18 U.S.C. 924(c)(1)(A)(ii). Defendant Bibbs is also charged with witness tampering in violation of 18 U.S.C. 1512(b)(1).

Defendants had a detention hearing before Magistrate Judge Zimmerman on June 7, 2007. Before the hearing, defendants objected to the government proceeding by proffer at the detention hearing. Magistrate Judge Zimmerman ruled preliminarily that he would permit an opportunity for some testimony at the hearing only if there were material facts sufficiently in dispute. Following the hearing, Magistrate Judge Zimmerman issued three rulings. *First*, he held that there were no material facts in dispute which would require the hearing of testimony. *Second*, he held that the government had proven (1) by a preponderance of the evidence that defendant Bibbs posed a flight risk (2) by clear and convincing evidence that defendant Bibbs was a danger to the community and (3) that no conditions of release would reasonably assure Bibbs' appearance or the safety of the community. *Third*, he held that the government had proven by clear and convincing evidence that defendant Watson was a danger to the community and that no conditions of release would reasonably assure the safety of the community.

3

Defendants now move to revoke Magistrate Judge Zimmerman's detention orders. They again contend that, pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004), they should be permitted to call witnesses and cross-examine prosecution witnesses at the detention hearing. They also contend that even if testimony were not allowed, the magistrate judge erroneously found that they should not be released under the Bail Reform Act.

**ANALYSIS**

**1.    RIGHT TO CALL WITNESSES AT DETENTION HEARING.**

With respect to the threshold issue, at oral argument on the instant motions, counsel for Bibbs stated that he was no longer seeking to call witnesses at the hearing. Counsel for defendant Watson stated that he would only seek to do so if the Court found that the presumption in favor of confinement applied under the Bail Reform Act.

This order rejects defendants' assertion of a right to call witnesses at a detention hearing. This order adopts in full the well-reasoned decision of Magistrate Judge Zimmerman issued on June 8, 2007, which overruled defense counsel's objections to the government's use of proffers (Doc. 13).

**2.    REVIEW OF MAGISTRATE JUDGE'S DETENTION ORDER.**

Under the Bail Reform Act, a defendant may be detained pending trial if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. 3142(e). A judicial officer may make such a finding only after holding a hearing according to the procedures specified in Section 3142(f), at which the government bears the burden of proof. The government must prove risk of flight by a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985). It must prove by clear and convincing evidence that no release condition would reasonably assure the safety of the community. *United States v. Salerno*, 481 U.S. 739, 751 (1987).

The Act established a rebuttable presumption that a defendant is both a flight risk and a danger to the community if there is probable cause to believe that the person committed an offense under 18 U.S.C. 924(c). 18 U.S.C. 3142(e). Once this presumption is triggered, the

4

burden of production then shifts to the defendant to offer rebuttal evidence; the burden of persuasion remains with the government. *United States v. Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992) (Walker, J.).

On a motion to revoke a detention order issued by a magistrate judge, the standard of review to be applied to the magistrate judge's ruling is *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990). The Ninth Circuit has stated: "[T]he district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist. . . . It should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Ibid.*

### A. Probable Cause.

Defendants' principal allegation is that the government has failed to establish that probable cause exists to charge them with carjacking under federal law. The federal carjacking statute provides enhanced penalties for "[w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so." 18 U.S.C. 2119. Here, the facts as alleged by A.W. are that (1) two men got into an empty car from which A.W. had just emerged, (2) after they got into the car A.W. turned back toward the car, (3) the person in the passenger's seat, allegedly Bibbs, pulled a gun out of his sweatshirt pocket, (4) the victim turned and ran, and (5) as she ran, she thought she heard a click, which she believed to be the gun trigger being pulled. When the gun was later retrieved, a live round was jammed in the chamber. It is defendants' view that the government has not shown that they "took" the vehicle here with the concurrent "intent to cause death or serious bodily harm" or that they did so by force, violence or intimidation. Rather, defendants contend that the act of taking the car was already complete when they got into the car. The act of *later* pointing the gun at A.W. as she ran away, it is alleged, cannot be considered when determining probable cause because that act occurred after the taking of the car was complete.

5

Defendants rest their argument primarily on the Supreme Court's decision in *Holloway v. United States*, 526 U.S. 1 (1999).  There, the Supreme Court examined one element of Section 2119 — the requirement that the defendant act with the intent to cause death or serious bodily injury.  The Supreme Court held that a "conditional" intent would satisfy the specific-intent element of the statute.  That is, the intent requirement of the provision "is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver *if necessary* to steal the car." *Id.* at 12 (emphasis added).  In reaching its conclusion, the Supreme Court made the following observation:  "The statute's *mens rea* component modifies the act of 'tak[ing]' the motor vehicle.  It directs the factfinder's attention to the defendant's state of mind at the *precise moment he demanded or took control over the car* 'by force and violence or by intimidation.'" *Id.* at 8 (emphasis added).

Defendants seize on the Supreme Court's language that a defendant must possess the requisite intent at the "precise moment" the car was taken.  They allege that there is no basis to believe that "at the precise moment [they] took control over the car," they (1) used force, violence, or intimidation, or (2) had the intent to inflict death or serious bodily harm if necessary.  This order holds that defendants' view of the statute is too narrow.

The Ninth Circuit has recognized that carjacking is "a continuous transaction that is not complete until the victims have been separated from their vehicle (*i.e.* takes . . . *from* the person or presence of another . . .')." *United States v. Hicks*, 103 F.3d 843–44 n.4 (9th Cir. 1996).  Contrary to defendants' suggestion, the "taking" here continued to occur even after the instant that Watson and Bibbs initially entered the car.  The Ninth Circuit has explained that the carjacking statute requires "the acquisition by the robber of possession, dominion or control of the property *for some period of time*." *United States v. DeLaCorte*, 113 F.3d 154, 156 (9th Cir. 1997) (emphasis added).  Moreover, *United States v. Burns*, 701 F.2d 840, 843 (9th Cir. 1983), held in the context of the federal robbery statute that a defendant commits a taking "from the person or presence of another" if the property is "so within [the victim's] reach, inspection, observation or control, that he could if not overcome by violence or prevented by fear, retain his

6

possession of it." *Burns* has since been extended to apply to the federal carjacking statute at issue in the instant case. *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001) ("As the review of caselaw reveals, the trend among the circuits is to adopt the early reasoning of the Ninth Circuit in *Burns* and its progeny by holding that property is in the presence of a person if it is so within his reach, inspection, observation or control, that he could if not overcome by violence or prevented by fear, retain possession of it.").

The *res gestae* of the offense here included getting in the car and initially possessing it. It *also*, however, encompassed the period (literally seconds later) while A.W. was trying to get her car back. The crime was not complete as long as A.W. was still trying to regain possession of the vehicle and was in a position to possibly do so. Here, when Bibbs pulled the gun on her, she was still in the vicinity of the car and could have regained possession of her vehicle. The continued taking, therefore, included not only defendants' initial acts, but also their actions of pointing a gun at her and attempting to shoot her. Defendants clearly, then, used force and intimidation during the commission of the taking. They also possessed the specific intent to use force if necessary, as required by *Holloway*, while the taking was occurring.

*          *          *

It is clear that probable cause exists to believe that defendants committed a carjacking pursuant to Section 2119. To the Court, it is a metaphysical point whether the gun was brandished before or immediately after defendants got inside the car. As a matter of probable cause, the gun's very presence is sufficient to establish that Bibbs had the intent to use it if needed to take the car. The possession, dominion, or control exerted by defendants could not have come to an end here while A.W. attempted to — and possibly could have — regained possession of her vehicle. Defendants clearly employed force, violence, and intimidation in the course of taking the vehicle.

Defendant Watson raises the concern that A.W. never saw him with a gun and that Bibbs was the only individual alleged to have brandished one. Notwithstanding that fact, the government has established probable cause to believe that Watson was an aider and abettor and confederate of Bibbs. Both defendants knew each other and they did the deed together. It can

7

be reasonably inferred that both defendants knew about the gun and intended that it be used if necessary. It is reasonable to find under the circumstances that Watson knew about the gun and was therefore equally culpable in the use of the gun.

### B. WHETHER THE MAGISTRATE JUDGE ERRED.

Because there is probable cause to find that defendants committed an offense under Section 924(c)(1), it is presumed, subject to rebuttal, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *See* 18 U.S.C. 3142(e) & (g)(1). This order holds that neither defendant has overcome the presumption that he is a danger to the community.

Defendants do little to challenge the findings of Magistrate Judge Zimmerman regarding the factors which led to his determinations that detention was necessary as to both defendants in this case. Magistrate Judge Zimmerman held, among other things, that neither defendant had rebutted the presumptions that were triggered by the Section 924(c) charge; that both defendants face substantial sentences; that defendants have no stable residences, work, or educational history; that both defendants have substantial juvenile criminal histories; that both defendants have some adult criminal histories; that both defendants were on some form of supervision at the time of the alleged offenses charged here; and that the offenses involved use of a firearm.

Finding on *de novo* review that Magistrate Judge Zimmerman did not err by issuing the detention orders, this order adopts his reasoning. The government has proven by clear and convincing evidence that defendants pose a danger to the community. Further considerations are stated herein.

The allegations in this case are particularly egregious and demonstrate that both defendants pose a high degree of potential risk to the community. During the course of the offense, defendants attempted to fire a gun at a visibly pregnant woman. When the gun was retrieved by the police, a live round was jammed in the chamber. Very likely, the click A.W. heard was a misfired round. Moreover, defendant Bibbs later tried to intimidate her so that she would not testify against him.

8

It is true that there is some rebuttal evidence presented by defendants. Specifically, both defendants were, at separate times, accidentally released by the San Francisco County Jail. Both were reapprehended by law enforcement within a day of their release, at locations where the officials believed they might be. These accidental releases do marginally assist defendants, but the release periods were so brief that their evidentiary value is very limited.

## CONCLUSION

For the foregoing reasons, defendants' motions to revoke the magistrate judge's detention orders are **DENIED**.

**IT IS SO ORDERED.**

Dated: July 30, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE